UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID McCRONE,<br><br>      Petitioner,<br><br>  vs.<br><br>WILLIAM D. BROWN, Superintendent,<br>Eastern Correctional Facility,<br><br>      Respondent. | No. 9:07-cv-00077-JKS<br><br>MEMORANDUM DECISION |

  Petitioner David McCrone, appearing *pro se*, has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner is currently in the custody of the New York State Department of Corrections incarcerated at the Eastern Correctional Facility serving two consecutive terms of 10 years each upon conviction of two counts of Robbery in the Second Degree (N.Y. Pen. Law § 160.10) in the Broome County Court.  Respondent has answered the petition and Petitioner has filed his traverse.[1]

  Petitioner timely appealed his conviction to the Appellate Division, Third Department, which affirmed on November 18, 2004, and the New York Court of Appeals denied leave to appeal on February 10, 2005.  *People v. McCrone*, 784 N.Y.S.2d 683 (N.Y.A.D. 2004), *lv. denied*, 828 N.E.2d 92 (Table) (N.Y. 2005).  On April 6, 2006, Petitioner filed a motion to vacate the judgment under N.Y. Crim. Proc. Law §§ 440.10/440.20 in the Broome County Court.  The Broome County Court denied the motion on September 25, 2006,[2] and the Appellate Division,

---

  [1] Although Petitioner filed his traverse untimely and did not request leave to do so, the Court has nonetheless considered it.

  [2] Petitioner's motion is dated April 6, 2006, but it was not filed until May 19, 2006.  As did Respondent, the Court gives Petitioner, who is incarcerated and proceeding *pro se*, the benefit of every doubt, and assumes that petitioner delivered this motion to prison authorities for mailing on April 6, 2006.

Third Department, denied leave to appeal on December 11, 2006. Petitioner timely filed his petition in this Court on December 18, 2006.[3]

The evidence upon which he was convicted is described in the decision of the Appellate Division (784 N.Y.S.2d at 684):

> Evidence adduced at that trial established that during the evening of April 15, 2001 and the early morning of April 16, 2001, defendant robbed two different Broome County convenience stores after displaying what appeared to be a gun to the store clerks. Although the clerks were themselves unable to positively identify defendant as the perpetrator (he was wearing a hooded sweatshirt to conceal his face), several other witnesses, including two accomplices, identified him as the person depicted in still photographs from video cameras in the stores. Evidence was also adduced that defendant implicated himself in both robberies to fellow inmates after his arrest.

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard). In applying this standard, this Court reviews the last reasoned decision by the state court, *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000), which in this case was that of the New York Appellate Division, Third Department, affirming his conviction and the Broome County Court in denying his §§ 440.10/440.20 motion. In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

If a federal claim has not been adjudicated on the merits, AEDPA deference is not required. *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003). In that situation, conclusions of

---

[3] The petition bears a filing date stamp of January 12, 2007. However, applying the mailbox rule and in the absence of evidence to the contrary, the Court assumes the petition was handed to prison authorities for mailing on the date it was signed.

law and mixed questions of fact and conclusions of law are reviewed *de novo*. *DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir. 2005). Where there is no reasoned decision of the state court addressing the ground or grounds raised by the Petitioner on the merits and no independent state grounds exist for not addressing those grounds, this court must decide the issues *de novo* on the record before it. *See Spears v. Greiner*, 459 F.3d 200, 203-04 (2d Cir. 2006) (applying the *Strickland* standards).

To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief. This Court may only address violations of federal law. 28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted). It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). It is also presumed that the state court knew and correctly applied state law. *See Walton v. Arizona,* 497 U.S. 639, 653 (1990) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In his petition before this Court, Petitioner raises four grounds: (1) Denial of equal protection because his court-appointed counsel had accepted a position with the prosecutor's office before trial (conflicted counsel);[4] (2) The trial court impermissibly considered Youthful Offender convictions in imposing sentence; (3) Petitioner was denied effective assistance of counsel in that counsel failed to (a) pursue *Rodriquez/Wade/Cardona* hearings, (b) utilize available defense witnesses, (c) use pretrial statements of certain witnesses for impeachment, (d) object to the use of notebooks by jurors, (e) recall a witness after another witness had testified, (f) move for a mistrial when the prosecution failed to call a listed witness, and (g) request a missing witness charge; (h) use a surveillance video from another robbery that Petitioner had not committed, (i) object to Court's reliance on arrests that were dismissed, and (j) admitted

---

[4] Although Petitioner terms this as a denial of equal protection, it is in reality a denial of effective assistance of counsel claim under the Sixth Amendment. This how it was presented to the Appellate Division and this Court treats it similarly.

Petitioner's guilt at sentencing; and (4) Actual innocence. Respondent concedes that Petitioner has exhausted his state court remedies with respect to all grounds raised.[5]

Ground 1: Conflicted Counsel.

In disposing of this issue, the Appellate Division held (784 N.Y.S.2d at 684–85):

> Defendant initially contends that he was denied the effective assistance of counsel because of a claimed conflict of interest on the part of his trial counsel and counsel's failure to call a particular witness at trial. With respect to the alleged conflict of interest, the record reveals that prior to trial, defense counsel informed County Court that he accepted a position with the District Attorney's office to commence on a date beyond the pendency of defendant's case. Although the court was initially inclined to grant his request to be relieved as counsel and assign a new lawyer, defendant stated on the record that he wanted this particular lawyer to continue to represent him. County Court acceded to defendant's request. Defendant now takes issue with the court's decision, claiming that it failed to make a proper inquiry about this conflict of interest and defendant's waiver thereof. We are unpersuaded.
>
> First, defense counsel's future duties as an Assistant District Attorney did not pose a conflict of interest since defendant's trial was slated to end well in advance of this new employment (*cf. People v. Shinkle,* 51 N.Y.2d 417, 420, 434 N.Y.S.2d 918, 415 N.E.2d 909 [1980] ). Even assuming that defense counsel's future employment did pose a conflict, such conflict did not "operate[ ] on the defense" in this case (*People v. Abar,* 99 N.Y.2d 406, 409, 757 N.Y.S.2d 219, 786 N.E.2d 1255 [2003] ). The record plainly reveals that, despite his future employment with the District Attorney's office, defense counsel actively participated in the trial, competently adduced proof establishing the defense theory of the case (i.e., that defendant was wrongfully accused) and vigorously cross-examined all prosecution witnesses on his or her past inconsistent statements, criminal history and/or motives to testify against defendant. In particular, defense counsel took an aggressive stance against a police investigator and the Assistant District Attorney prosecuting the case (i.e., his future colleague) in suggesting that they threatened one of the accomplices if he did not testify against defendant.
>
> Defense counsel also emphasized to the jury that the two store clerks, who were the only eyewitnesses to the robberies without a criminal record and/or motive to testify against defendant, were unable to positively identify defendant as the perpetrator and, in fact, described the perpetrator as one with a different

---

[5] The attorney conflict, youthful offender conviction, failure to request a *Wade* hearing, and ineffective counsel for failure to call witnesses (Caffero) claims were raised on direct appeal. The remaining claims were raised in his motion to vacate the judgment.

ethnicity than that of defendant. He relatedly emphasized the lengthy criminal histories of most of the People's witnesses and the benefits they received for testifying. Consistent with the defense theory of the case, defense counsel delivered cogent opening and closing arguments with a "quality over quantity" theme in attacking the People's case against defendant. While the jury ultimately convicted defendant, the verdict was not attributable to any alleged conflict on the part of his defense counsel. Nor does the single claimed omission of failing to call a particular witness warrant a finding that counsel was ineffective, particularly where defense counsel successfully obtained a missing witness charge concerning this very person.

Where a Sixth Amendment right to counsel exists, "there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). "[A] defendant has suffered ineffective assistance of counsel in violation of the Sixth Amendment if his attorney has (1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance." *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994). An actual conflict exists when the interests of counsel and defendant "diverge with respect to a material factual or legal issue or to a course of action." *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993), quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356 n.3 (1980). It may be fairly said that in this case an actual conflict existed. Assuming that counsel was in fact conflicted, whether potentially or actually, does not carry the day for Petitioner. If the conflict was potential, Petitioner at the very least must show some prejudice he suffered by reason of the conflict. *United States v. Matera*, 489 F.3d 115, 125 (2d Cir. 2007). If it was actual, prejudice is presumed only if the conflict adversely affected counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 692 (1984), quoting *Cuyler v. Sullivan*, 446 U.S. at 350.

The Appellate Division found that, counsel's future employment notwithstanding and counsel's expressed qualms about continued representation, his performance in defending Petitioner was not adversely affected. This finding is amply supported by the record. Based upon the record, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor

can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Petitioner is not entitled to relief on his first ground.

Ground 2: Consideration of Youthful Offender Convictions.

Although the issue was raised in his direct appeal, the Appellate Division did not expressly address this issue. However, this Court notes that the appropriateness of using the youthful offender convictions as a factor in imposing a sentence does not run afoul of the Constitution or federal law. *See United States v. Jackson*, 504 F.3d 250, 251–53 (2d Cir. 2007) (holding that federal courts may consider New York youthful offender convictions as predicate offenses in enhancing federal sentences). Thus, as noted above, as an issue of state law it is beyond the purview of this Court in a federal habeas proceeding. Petitioner is not entitled to relief on his second ground.

Ground 3: Ineffective Assistance of Counsel.

To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions. Indeed, the Supreme Court admonished in *Strickland*, 466 U.S. at 689 (internal citations and quotation marks omitted):

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

In disposing of his motion to vacate the conviction, the Broome County Court held:

> The defendant now seeks to have this Court consider those matters already raised, or that could have been raised on his appeal. To the extent his motion is predicated on such matters, it must and should be denied. CPL §440.10[2],[3][a]. To the extent he raises issues outside the record, his motion should likewise be denied as he has failed to establish sworn factual allegations beyond those self-serving conclusory allegations he himself makes. He has failed to establish that the non-record facts sought to be established are material and would entitle him to relief in order to be entitled to a hearing on a motion to vacate based on claim of ineffective assistance of counsel. *People v. Baptiste*, 306 AD2d 562, 569 (3rd Dept. 2003). As the People urge, his claims are unsupported by any other affidavits or evidence, or are belied by the record. *See*, CPL §440.30[d]. Moreover, as to those 'examples' he gives of matters that should have been raised at trial or evidence that could have been elicited had his attorney called certain witnesses, the Court notes that much, if not all, of what he proposes as evidence would have been inadmissible at trial. A review of the record establishes that trial counsel had a clear cogent theory of the case, and his strategic decisions are reflected in his vigorous and competent representation of the defendant at the trial.
>
> As for defendant's claim now that he had wanted to testify at trail (*sic*), he could have made this claim appear on the record but didn't. As his other allegations, this one is likewise self-serving. Given the *Sandoval* ruling in the case, the Court is hard-pressed to reach any conclusion other than that the defendant at the trial made an intelligent, voluntary and knowing decision not to testify, despite his claim now.
>
> Defendant's remaining contentions have been considered and are found to be without merit. His motion is denied in all respects.

The Court must apply these principles to the allegations asserted by Petitioner.

(1) **Failure to Request *Rodriquez/Wade/Cardona* Hearings**.  The necessity of a pretrial hearing under either *Rodriguez*[6] or *Wade*[7] does not appear from the record.  There is nothing in the record that supports Petitioner's conclusory statements that any pre-trial identification was either confirmatory or suggestive that Petitioner was the perpetrator of the robbery.  Petitioner's complaint is with respect to the trial testimony in which several individuals identified Petitioner as the person they had known for some time and as to matters involving Petitioner that occurred *in their presence*.  This is hardly the subject of either a *Rodriguez* or *Wade* hearing.  As for the eyewitnesses, Franklin and Semkus, the Court held, outside the presence of the jury, a hearing on the circumstances as to which they had been shown photographs of Petitioner prior to trial.  The testimony was that the photographs of Petitioner were shown to these witnesses "as the person who would be in the courtroom."  The witnesses were not told Petitioner was the person who robbed them, nor were they asked that question.  What more would have been determined at a *Wade* hearing is unexplained and inexplicable.

As for the *Cardona*[8] issue, Petitioner identifies three witness that he contends should have been subjected to a *Cardona* hearing: Newby, Parsons, and Keefer.  Plaintiff alleges that these witnesses were agents of the government and, therefore, their testimony should have been barred as having been solicited in violation of Petitioner's Sixth Amendment right to counsel.  Where the prosecution actively solicits a co-defendant or fellow prisoner to inform on a defendant, incriminating or inculpatory statements made by the defendant outside the presence of counsel violate the Sixth Amendment right to counsel and are inadmissible.  *See Massiah v. United States*, 377 U.S. 201 (1964).  However, where an informer acts independently of the prosecution, providing information on his own initiative, and the government's role is limited to the passive

---

[6] *People v. Rodriguez*, 593 N.E.2d 268 (N.Y. 1992) (hearing to determine if a pretrial identification was confirmatory).

[7] *United States v. Wade*, 388 U.S. 218 (1967) (hearing to determine if pretrial identification procedures were improperly suggestive).

[8] *People v. Cardona*, 360 N.E.2d 1306 (N.Y. 1977) (hearing to determine if persons to whom inculpatory statements are made were acting as agents of the state).

receipt of the information, the informer is not, as a matter of law, an agent of the government.  *Cardona*, 360 N.E.2d at 1307; *see also United States v. Stevens*, 83 F.3d 60, 64–65 (2d Cir. 1996) (holding that information obtained before an inmate becomes a government agent is not covered by the *Massiah* rule).

There is nothing in the record that indicates Newby received any "deal" in exchange for his testimony, nor is there any evidence that Newby was approached by any law enforcement officer before the events and conversations that he testified to occurred. The evidence also shows that Parsons did not receive a "deal" from the prosecution in exchange for his testimony.  In addition, Parson's testimony was that he was not approached by any law enforcement officer until after the events and conversations that he testified to occurred.  With respect to Keefer, the prosecutor sent a letter to the parole board on his behalf, with the understanding that Keefer's testimony at trial would be consistent with the testimony he gave to the grand jury.[9]  However, this occurred after the events and conversations to which Keefer testified occurred.  Keefer admitted that he reached out to the Broome County District Attorney's Office to offer them assistance if they could help him.   There is also a lack of any evidence in the record that Keefer was approached by any law enforcement officer prior to those events and conversations. There was no basis for a *Cardona* hearing or to bar the testimony of Newby, Parsons, or Keefer; consequently, counsel's performance could hardly be termed deficient for failing to request one.

(2) **Failure to Call Witnesses**.  Petitioner faults counsel for failing to call numerous witnesses.

(i) *Petitioner*.  What Petitioner conveniently overlooks is that, as the Broome County Court noted, given the results of the *Sandoval* hearing,[10] placing Petitioner on the stand would have exposed him to cross-examination on his prior

---

[9] The contents of the letter are not part of the record before this Court.  For the purposes of making its decision, the Court presumes the letter was favorable to Keefer.

[10] *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974) (hearing to determine use of prior convictions to impeach a defendant in the event the defendant elects to testify).

MEMORANDUM DECISION
*McCrone v. Brown*, 9:07-cv-00077-JKS           9

criminal history. Thus, this Court cannot say that the decision of the Broome County Court rejecting his *post hoc* claim that he would have testified at the trial if permitted to so do was clearly erroneous.

(ii) *Investigator Beers*. The testimony of Beers with respect to statements made to him would be inadmissible hearsay, unless otherwise admissible under some exception to the hearsay rule. As to those witnesses whom Beers interviewed who did in fact testify, the Court's review of the transcript of that testimony shows that counsel utilized the statements made to Beers to impeach where appropriate. Petitioner has not identified any testimony of any of those witnesses where the witness denied making the statement to Beers, which could trigger the testimony of Beers to rebut.

(iii) *Anna Griegel, Kim McCrone, Ruth Smith, Candace Seabrooks*. Petitioner asserts a hodgepodge of matters to which these individuals might testify. None of it is supported by affidavits by the "witness" and, even if Petitioner's recitation of the omitted testimony is true, for the most part consists of either hearsay or is related to peripheral issues that were either inconsequential or relate to matters that were not the subject of testimony or evidence at trial. What relevance the testimony of Petitioner's sister, Kim, that the person in the picture she was shown was not Petitioner has is unexplained and inexplicable. If the picture was introduced into evidence, the jury, and the jury alone, would make its decision as to whether the picture was that of Petitioner. If the picture was not introduced into evidence, it was totally irrelevant.

(iv) *Vito Caffero*. In disposing of this argument the Appellate Divisions held (784 N.Y.S.2d at 685): "Nor does the single claimed omission of failing to call a particular witness warrant a finding that counsel was ineffective, particularly where defense counsel successfully obtained a missing witness charge concerning this very person." The Court agrees. The Court is also experiencing difficulty in ascertaining the relevance of the Caffero gun collection. Contrary to Petitioner's position, whether the person who committed the robbery

was armed with a particular gun was irrelevant.[11]  What was relevant is that the robber was armed with a gun, a fact to which the two clerks testified and the surveillance videos corroborated..

(v) *Randy Hill*.  Button's testimony on cross-examination was consistent with what Hill told the investigator Button said to Hill.  The jury would not have heard any evidence concerning the nature of the police investigation or the conditions under which the police obtained the statements of Button that was not already before it as a result of Button's testimony.[12]

(vi) *Clifton Brooks*.  As counsel explained, although Brooks potentially provided Petitioner an alibi for the April 15 robbery, in counsel's professional opinion Brooks' credibility would be so damaged as to render his testimony meaningless and, further, that counsel did not want to taint an otherwise viable defense.  Whether this assessment was right or wrong, it is within the prerogatives of defense counsel and does not render his performance deficient.

(vii) *Patricia Nelson*.  This witness was the clerk involved in the April 22 robbery.  There is no evidence in the record, other than Petitioner's conclusory statement, that the perpetrator of the April 22 robbery was the same person as the one who committed the April 15 and 16 robberies.

(viii) *Sheriff Deputy David Allen*.  What this potential witness might have testified to concerning Button was either presented to the jury as a result of the cross-examination of Button or was cumulative.

(ix) *BPD & BCSD Officers.*  Petitioner's characterization of the potential testimony of these officers is based entirely upon supposition and conjecture.

---

[11] Although there is an indication, if not evidence, in the record that the police seized a gun from Caffero's residence, no gun was ever introduced into evidence at trial.  There is also evidence (the testimony of Paula Rogers) that prior to the robberies Petitioner found a gun in her room, which was in the Caffero residence, and placed it in a drawer.  Rogers testified she never looked again until the detectives came after the robberies and the gun was not there at that time.

[12] Petitioner also makes reference to a conflict because Hill was a prosecution witness in a case in which a partner of counsel was representing the defendant.  This contention is not only unsupported by any evidence in the record, it is counterintuitive.

There is nothing in the record to support his conclusory characterization that they found Button and Thompkins not credible.

(x) *Forensic Video Expert*. The People's forensic video expert, although he pointed out the similarities between the perpetrators in the April 15 and April 16 robberies, he was not asked to, nor did he, express an opinion that the individual was the same person or that the individual in the photographs was the Petitioner. The question of whether the surveillance photographs were of Petitioner was an issue for the jury, and the jury alone, to decide, which the jury obviously did. Petitioner faults counsel for not engaging his own forensic expert to examine the surveillance video of the April 22 robbery (a time when Petitioner was in jail). There is no evidence, other than Petitioner's conclusory statement, that the perpetrator of the April 22 robbery was the same individual who perpetrated the April 15 and 16 robberies of which Petitioner was convicted.

(3) **Failure to Use Impeaching Statements**. The impeaching statements that Petitioner refers to with respect to Scott Button, Paula Rogers, Tamara Franklin, Sarah Semkus, and George Parsons, were all statements made to Petitioner's pretrial investigator, Beers. Whether presented in the form of the report itself or by the testimony of Beers, this was inadmissible under the rules of evidence. Moreover, a review of the trial transcript shows that as to each of those witnesses, counsel utilized the information contained in the interviews on cross-examination to impeach the witnesses. This was all the law permitted counsel to do and he did it quite vigorously and extensively. Counsel's performance in this area was not deficient. The extent to which a witness is cross-examined, in particular the extent to which attempts to impeach adverse testimony, is well within the prerogatives of defense counsel.

(4) **Use of Juror Notebooks**. Under New York law, the taking of notes by jurors is at the discretion of the trial judge. *People v. Hues*, 704 N.E.2d 546, 549 (N.Y. 1998). The only requirement is that the trial court provide appropriate limiting instructions, at the beginning and again immediately prior to submitting the case to the jury for deliberation. *Id*. Contrary to Petitioner's assertions there is no requirement that a

limiting instruction be given during the trial, nor does New York law preclude jurors from using their notes during deliberations. A review of the record reveals that the trial court gave a limiting instruction that complied with the requirements of *Hues*. However, the trial court did not repeat the limiting instruction in charging the jury prior to submitting the case to them for deliberation as required by *Hues*. The Court agrees that it was error not to give the limiting instruction and, further that counsel should have requested the instruction be given. However, there is nothing in the record to suggest that this omission prejudiced Petitioner or that it affected the outcome.

(5) **Failure to Recall Button**. Petitioner argues that if counsel had recalled Button he would have been able to impeach him by using a statement given to the police by his co-defendant, Thompkins.[13] How this statement, which Button did not make, would impeach Button is not demonstrated. At best, the statement as recorded in the investigating officer's notes and trial testimony of Thompkins may have, to an extent, contradicted Button's testimony. That, however, is a matter counsel may elect to address in argument, not by cross-examination of the witness whose testimony is contradicted.

(6) **Failure to Request Mistrial**. Although listed as a witness, the prosecution declined to call Vito Caffero as a witness. Counsel requested a missing witness charge, which was granted. Petitioner argues that counsel should have requested a mistrial. What Petitioner neglects to do is articulate the basis upon which counsel may have requested a mistrial or demonstrate that there is any reasonable probability that a mistrial would have been granted.

(7) **Failure to Request Missing Witness Charge for Collona**. Brigitta Collona testified before the grand jury but she was not listed as a witness at trial, nor was she called. Petitioner faults counsel for failing to request a missing witness charge. To warrant a missing witness instruction, Petitioner must establish that: (1) the witness had knowledge material to the trial; (2) the witness was expected to give noncumulative testimony favorable to the party against whom the charge is sought; and (3) the witness is

---

[13] The material consists of notes made by an investigating officer that were not disclosed to the defense, not a statement made and signed by Thompkins.

available to the party who would be expected to call the witness. *See People v. Savinon*, 791 N.E.2d 401, 404 (N.Y. 2003). Petitioner has failed to make any argument with respect to any of these factors. Petitioner does not even explain how Collona would have been expected to testify. Because petitioner has not demonstrated that he would have been entitled to a missing witness charge, he has not established that counsel acted unreasonably in failing to request one or that he was prejudiced by this failure.

(8) **Use of Surveillance Video of an Unrelated Robbery**. As noted above, Petitioner belabors the April 22 robbery, which occurred while Petitioner was in jail. He contends that the perpetrator of the April 22 robbery was also the perpetrator of the April 15 and 16 robberies. His entire argument is hinged on a single point: the description of the perpetrator of the April 15 and 16 robberies by the clerks more closely resembles the perpetrator of the April 22 robbery than Petitioner. However, the record is clear: at trial the dissimilarities between the descriptions they initially provided and Petitioner was thoroughly covered by counsel in cross-examining the clerks. Moreover, neither clerk directly identified Petitioner as the perpetrator; they identified still photographs introduced into evidence taken from the surveillance videos as being the perpetrator. As noted above, that the photograph was that of the Petitioner was solely within the province of the jury to determine.

(9) **Objection to Court's Reliance on Dismissed Arrests**. Although the probation report included arrests that did not result in conviction, there is absolutely no indication in the record that in imposing sentence the trial judge improperly relied upon these. Petitioner's position is predicated upon the unwarranted assumption that, because the information was before the judge, he considered it. This Court will not make such an assumption.

(10) **Admission of Guilt at Sentencing**. Petitioner asserts that at sentencing counsel admitted Petitioner's guilt notwithstanding that Petitioner continued to maintain his innocence in stating "I think that these crimes were premised upon the substance abuse problem." Petitioner argues that this "admission" prejudiced him because it caused the judge to believe he was guilty. Petitioner's argument is specious. At the time of

sentencing a trial judge is certainly predisposed to believe a criminal defendant is guilty—a jury has made that determination. The court in imposing sentence stated:

> With regard to your claim of innocence, I understand that. That's your right to assert that, even to this point in time. I want the record to reflect I'm absolutely satisfied -- I sat through the trial, as everyone knows, the evidence in this case in my view, was strong. Okay? I have no problem, whatsoever, with the jury's verdict in this case. There is no question, whatsoever, mr. (*sic*) McCrone, in my mind, but that you are the man that walked into those two stores and robbed those two manly (*sic*) Mighty Marts. No question in my mind, whatsoever.

In addition, taken in context, that statement, while it quite likely may be taken as an admission of guilt, was part of counsel's argument for leniency. The entire statement reads:

> He does have a long history of drug abuse. By all accounts, I think that these crimes were premised upon the substance abuse problem. And, of course, as the PSI indicates, Judge, he does have a long history of narcotics abuse. While in the Broome County jail, Mr. McCrone has completed a pyscho-educational anger management program.
>
> And, based upon all those reasons, Judge, I would ask the Court impose a minimum sentence allowed.

This is a classic example of trial strategy that this Court should not be second-guessing or playing the Monday morning quarterback on—appealing to the court for leniency in imposing sentence.

Petitioner has failed to establish that counsel's errors, to the extent those errors were made, individually or cumulatively, were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that they prejudiced Petitioner's defense, as required by *Strickland-Hill*. In particular, Petitioner has failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Petitioner is not entitled to relief on his third ground.

Ground 4: Actual Innocence.

As Respondent correctly argues, while a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, a situation not present in this case, the Supreme Court has never held that a freestanding claim of innocence is cognizable in a § 2254

petition filed by a non-capital defendant. *See House v. Bell*, 547 U.S. 518, 554–55 (2006). *House* declined to answer the question left open in *Herrera v. Collins*, 506 U.S. 390, 427 (1993) (O'Connor, J. concurring) (noting that because "[p]etitioner has failed to make a persuasive showing of actual innocence. * * * the Court has no reason to pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence"). Nor, for that matter, has the Second Circuit. Assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a § 2254 proceeding, it is necessary to apply the appropriate standard to the evidence.

In the context of overcoming a procedural default, a federal habeas petitioner must demonstrate that the constitutional violations he alleges "ha[ve] probably resulted in the conviction of one who is actually innocent," such that a federal court's refusal to hear the defaulted claims would be a "miscarriage of justice." *Schlup v. Delo,* 513 U.S. 298, 326, 327 (1995) (internal quotation marks omitted). To make the requisite showing of actual innocence, Petitioner must produce "new *reliable* evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.,* at 324, 327 (emphasis added). In the context of the hypothetical freestanding actual innocence claim, the Supreme Court has described the threshold as "extraordinarily high." *Herrera*, 506 U.S. at 417. "The sequence of the Court's decisions in *Herrera* and *Schlup*-first leaving unresolved the status of freestanding claims and then establishing the gateway standard—implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*." *House*, 547 U.S. at 555. Measured against this standard, Petitioner has fallen far short of establishing his actual innocence.

The Court agrees with Respondent that none of the evidence relied upon by Petitioner to establish his actual innocence meets the high standard implied by *Herrera*. At best, this evidence tends only to further discredit some of the prosecution witnesses; however, the credibility of these witnesses was strenuously challenged at trial. The evidence is not exculpatory, nor is it the type of reliable scientific or eyewitness evidence *Schlup* indicates is required. Moreover, Petitioner does not present new evidence, in the form of affidavits, but

rather offers only his summation of what the witnesses might have testified to or the evidence might have shown. Petitioner is not entitled to relief on his fourth ground.

Petitioner not being entitled to relief on any of the grounds raised in his petition,

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)). To the extent the issues raised in the petition were addressed by the New York Appellate Division, Third Department, in affirming Petitioner's conviction or the Broome County Court in denying his motion to vacate the judgment, no reasonable jurist could find that the decisions were "objectively unreasonable." Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court to enter final judgment accordingly.

Dated: March 17, 2008.

s/ James K. Singleton, Jr.  
JAMES K. SINGLETON, JR.  
United States District Judge

.